IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**MANUEL PEREZ-COLON,**

        Petitioner,

v.

**TERRY O'BRIEN,**

        Respondent.

**Civil Action No.: 3:14-CV-66 (GROH)**

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On June 24, 2014, Petitioner Manuel Perez-Colon[1] ("Petitioner" or "Defendant"), acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] (the "Petition"). On July 24, 2014, Petitioner paid the $5.00 filing fee. ECF No. 6. On August 26, 2016, the Court entered an Order to Show Cause [ECF No. 8] why the Petition should not be granted. On September 13, 2016, Respondent filed a Motion to Dismiss and Response to Show Cause Order [ECF No. 11] together with a Memorandum in Support. ECF No. 12. On October 13, 2016, the Court entered a Roseboro Notice [ECF No. 17], informing Petitioner of his right and obligation to respond to the Government's Motion. On November 7, 2016, Petitioner filed his Response. ECF No. 19. The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the

---

[1] Petitioner is a federal inmate housed at the federal correctional institution in Hazelton, West Virginia.

undersigned recommends that the Petition be denied.

## II. BACKGROUND[2]

### A. Conviction and Sentence

In 1997, Petitioner and seventy-eight co-defendants were indicted for their involvement in "a sprawling drug smuggling and distribution network in southwest Puerto Rico between [the years of] 1994 and 1997." United States v. Martinez-Medina, 279 F.3d 105, 111 (1st Cir. 2002). Specifically, Petitioner was indicted in Count One for conspiring to possess and distribute "multi-kilogram amounts of cocaine, heroin, and marijuana," in violation of 21 U.S.C. §§ 841(a)(1) and 846, and in Count Two for conspiring to engage in illegal financial transactions involving the drug proceedings, in violation of 18 U.S.C. §§ 1956(a)(1) and 1957.[3] Id.

From October through December of 1998, Judge Salvador E. Casellas held a jury trial for Petitioner and six of his co-defendants who did not enter into plea agreements. Id. On December 18, 1998, the jury returned a verdict of guilty against Petitioner on both Counts One and Two. ECF No. 1757. On July 2, 1999, Judge Casellas sentenced Petitioner to life imprisonment for Count One and twenty years' imprisonment for Count Two, to be served concurrently. ECF No. 2300. Petitioner's life sentence was based, in part, on the District Court's determination at sentencing that his conspiracy involved more than 150 kilograms of cocaine, based on a preponderance of the evidence presented at trial.[4] See United States v, Martinez-Medina et al., 279 F.3d

---

[2] Throughout this section, all ECF numbers refer to entries in the docket of Criminal Action No. 3:97-CR-82, District of Puerto Rico, unless stated otherwise.

[3] Petitioner's charge under 18 U.S.C. § 1957, but not § 1956(a)(1), was later dropped. Martinez-Medina, 279 F.3d at 111.

[4] In accordance with settled practice at the time, United States v. Lindia, 82 F.3d 1154, 1160-61 (1st Cir. 1996), the court proceeded to determine the quantity of drugs involved in the

2

105, 121 (1st Cir. 2002). Petitioner filed several post-trial motions, including a motion for a new trial, which were all denied. See ECF Nos. 1876, 2204, 2746, 2900, 3527, 3567.

On July 14, 1999, Petitioner filed a Notice of Appeal with the United States Court of Appeals for the First Circuit. ECF No. 2324. In his appeal, Petitioner argued that: (1) the evidence was insufficient to support his conviction; (2) certain pieces of evidence were erroneously introduced at trial; (3) the prosecutor engaged in misconduct during closing arguments that tainted the trial; (4) a "buyer-seller" jury instruction[5] should have issued during the trial; (5) his sentence was improper because, *inter alia*, it violated his rights under Apprendi v. New Jersey, 530 U.S. 466 (2000), and (6) a new trial is warranted due to newly discovered evidence. Martinez-Medina, 279 F.3d at 113-27. On February 8, 2002, the First Circuit affirmed Petitioner's conviction and sentence. Id. at 105.[6] On March 19, 2002, the First Circuit's mandate was issued. ECF No. 3053. On

---

conspiracy and fairly attributable to Petitioner and one of his co-defendants. This figure was far more than needed to trigger the statutory maximum life sentence, 21 U.S.C. § 841(b)(1)(A), and enough to set Petitioner's guideline offense level at 38, the highest unadjusted level for drug crimes. U.S.S.G. § 2D1.1 (1998). With a criminal history category of III, Petitioner was initially subject to a term of 292 to 265 months. However, the court found that a life sentence was mandated in his case for two reasons. First, after making the requisite factual findings, the court applied two upward departures to Petitioner's base offense level; a two-level increase for possession of a firearm, U.S.S.G. § 2D1.1(b)(1), and a four-level increase for being an organizer or leader of the conspiracy. Id. § 3B1.1. With these enhancements, Petitioner was subject to a life term. Second, as an alternative, the court applied U.S.S.G. § 2D1.1(d)(1)'s murder cross reference, which says that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 the sentencing court shall apply U.S.S.G. § 2A1.1. The court found, by a preponderance of the evidence, that Petitioner had ordered the murder of Sol Garcia. Accordingly, it increased his base offense level to 42, as specified in section 2A1.1. Petitioner was again subject to a life term. 279 F.3d at 121.

[5] A "buyer-seller" instruction "would have informed the jury that a buyer and seller in a single drug transaction are not invariably part of a drug conspiracy." Martinez-Medina, 279 F.3d at 120.

[6] Although Apprendi was decided in 2000, after Petitioner was sentenced, the First Circuit found no bar to applying the decision to Petitioner's appeal on direct review. 279 F.3d at 121-22. However, the Court held that an Apprendi error can be harmless, and the overwhelming evidence at trial supported the drug quantity. Furthermore, Petitioner conceded in his brief that he was responsible for more than 50 kilograms of cocaine, which would be sufficient for a life

May 5, 2002, Petitioner requested *certiorari* petition from the United States Supreme Court, which was denied. Perez –Colon v. United States, 122 S.Ct. 2608 (2002).

On July 24, 2003, Petitioner filed a section 2255 motion. ECF No. 3164. In it, Petitioner raised six grounds for relief based on allegations of ineffective assistance of counsel. Id. Specifically, he claimed (1) ambiguity in the verdict as to the particular drug involved; (2) failure to properly support a downward departure request; (3) Apprendi error; (4) conflict of interest; (5) Apprendi error as to a murder enhancement under the Sentencing Guidelines; and (6) failure to charge drug quantity in the indictment. On June 17, 2004, the Court denied all of Petitioner's grounds for relief and dismissed the section 2255 petition. See ECF Nos. 22 & 23, Civil Action No. 3:03-CV-1691, District of Puerto Rico.

On August 26, 2004, Petitioner filed a motion under Federal Rule of Civil Procedure 60(b) requesting that the Court reconsider the denial of his 2255 Petition in order to apply the Supreme Court's ruling in Blakely v. Washington, 124 S.Ct. 2531 (2004) to his case because Blakely "reaffirmed" Apprendi. Perez –Colon v. United States, Civ. No. 03-1691, ECF No. 24. Petitioner argued again that the drug amount should have been submitted to the jury to find beyond a reasonable doubt. The District Court of Puerto Rico treated that motion as a successive habeas petition, and ruled that in order for Petitioner to obtain any relief he had to apply to the Court of Appeals for an order authorizing the District Court to consider the application. Id. Thereafter, Petitioner filed a "Motion, pro-se, requesting Order for the Court to apply the Supreme Court's ruling in U.S. v. Booker and U.S. v. Fanfan," ECF No. 28; a "motion, pro-se, requesting Order for the District court to apply the manifest injustice standard to the previous sentence. Id. at 122.

rulings by the First Circuit's previous denial of the direct appeal to this Court's Orders," ECF No 29; and an "Informative Motion regarding Intention to Seek Writ of Mandamus." ECF No. 31. All were denied. ECF No. 35. Petitioner unsuccessfully appealed to the First Circuit. See Appeal No. 06-1762.

On May 27, 2008, Petitioner attempted again to have the District Court modify his sentence on collateral attack, by filing a motion styled as a "Request for Resolution of a Question of Law in Light of Constitutional Booker Error and Request for Correction of a Manifest Injustice on Obviously Wrong and Unreasonable Decisions." ECF No. 3439. The substance of Petitioner's motion was that a constitutional Booker error occurred where "the district court, not the jury's verdict, determined that the petitioner was to be attributed 150 kilograms of cocaine for sentencing purposes . . .and . . . for murder." Id. at 9. The District Court noted that these same arguments were already rejected by the First Circuit on direct appeal. In addition, the District court found that "[a]s it is now settled, Blakely was merely an application of the principles set forth in Apprendi." ECF No. 3448 at 2. Therefore, the District Court determined that Petitioner's Apprendi claim and Blakely claim must equally fail. Finally, the District Court also determined that the First Circuit had made it clear that Apprendi and its progeny do not apply retroactively to cases on collateral review. Accordingly, the District Court denied and dismissed the motion with prejudice.

Subsequently, Petitioner requested permission from the First Circuit Court of Appeals to file a second or successive Section 2255 motion, contending that his sentence is unconstitutional in light of Alleyne v. United States, 133 S. Ct. 2151 (2013). ECF No. 3506. On July 1, 2014, the First Circuit denied Petitioner's request, stating that

"Alleyne has not been made retroactive by the Supreme Court to cases on collateral review." Id.

On June 5, 2014, Petitioner filed Motion for Recall of Mandate in his original criminal appeal in the First Circuit. See Appeal No. 99-1999. Petitioner again alleged that failure to submit the drug amount to the jury to find beyond a reasonable doubt was in error under Apprendi, Alleyne, Burrage v. United States, 134 S.Ct. 881 (2014). On July 30, 2014, the First Circuit denied Petitioner's Motion.

On July 7, 2014, Petitioner filed his third request for permission to file a second or successive section 2255 motion. The Petitioner cited Burrage, Whiteside v. United States, 748 F.3d 541 (4th Cir. 2014), Peugh v. United States, 133 S.Ct. 2072 (2007); and Gall v. United States, 128 S.Ct. 586 (2007) to argue that the drug amount should have been submitted to the jury to find beyond a reasonable doubt. The First Circuit dismissed Petitioner's application because he was seeking to advance claims pursuant to 28 U.S.C. § 2241, and jurisdiction for such a claim resided in the Northern District of West Virginia.[7] In addition, to the extent that Petitioner was seeking an advance ruling from the court that his petition was not a second or successive motion pursuant to §2255, the First Circuit found that he was not entitled to an advance ruling and declined to address the question.

Finally, Petitioner sought permission to file a second or successive petition pursuant to § 2255, in the wake of Johnson v. United States, 135 S. Ct. 2551 (2015)

---

[7] The First Circuit specifically noted that Petitioner had already filed an identical petition with this Court. That petition was filed in Civil Action No. 5:14cv90 on July 7, 2014. The petition was dismissed on September 14, 2016. The Petitioner appealed to the Fourth Circuit. That appeal, has been consolidated with the appeal of 1:14cv119, another §2241 filed by the Petitioner in this district on July 9, 2014, and the Fourth Circuit has placed them in abeyance pending a decision in United States v. Surratt, Case No. 14-6851.

and Burrage v. United States, 134 S. Ct. 881 (2014). ECF No. 3583. On June 20, 2016, the First Circuit denied Petitioner's request, stating that "[t]he guideline provision that Perez seeks to challenge bears no resemblance to the residual clause invalidated in Johnson, and Barrage provides no basis for relief because Perez was not sentenced under the provision at issue in this case." Id.

### III.   DISCUSSION

#### A.   The Petition

In the Petition, Petitioner asserts only one ground for relief. ECF No. 1 at 5. Specifically, Petitioner contends he is actually innocent of his conviction under 18 U.S.C. §1956. In asserting this ground, Petitioner relies on the decision in Cuellar v. United States, 553 U.S. 550 (2008).

#### B.   The Motion to Dismiss

Respondent argues that Petitioner cannot challenge the validity of his sentence in this §2241 petition, because he cannot meet the savings clause of §2255.

#### C.   Petitioner's Response

Petitioner contends that until Santos v. United States, 553 U.S. 507 (2008) and Cuellar were decided he was foreclosed by circuit precedent from raising a claim that he was actually innocent of money laundering.

#### D.   Legal Standards

##### 1.   Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) allows a defendant to move for dismissal on the ground that a complaint does not "state a claim upon which relief can be granted." When reviewing the sufficiency of a complaint, a district court "must accept as true all of the

7

factual allegations contained the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitleme[ment] to relief' requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).

A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265. 286 (1986). In order to be sufficient, "a complaint, must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). Á claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

**E.     Analysis of the Petition**

Title 28, United States Code, Sections 2241 and 2255 each create a mechanism by which a federal prisoner may challenge his or her detention. However, the two sections are not interchangeable. Prisoners seeking to challenge the validity of their convictions or their sentences are required to proceed under Section 2255 in the district court of conviction. Rice v. Rivera, 617 F.3d 802, 807 (4th Cir. 2000); In re Vial. 115 F.3d 1192, 1194 (4th Cir. 1997).

Under Section 2255, a prisoner may move the sentencing court "to vacate, set

aside or correct" his sentence if he claims it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Second or successive petitions pursuant to Section 2255 must be certified by the appropriate court of appeals. Id. § 2255(h). Courts of appeals grant such requests only if newly discovered evidence establishes "by clear and convincing evidence that no reasonable factfinder would have found the movant guilty" or that a previously unavailable "new rule of constitutional law' has been "made retroactive to cases on collateral review by the Supreme Court." Id.

A petition for writ of habeas corpus pursuant to Section 2241, on the other hand, is intended to address the **execution** of a sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated. Examples of an appropriate use of Section 2241 include "actions challenging the computation of parole, computation of good time or jail credits, prison disciplinary actions, or imprisonment allegedly beyond the expiration of a sentence." Anderson v. Pettiford, 2007 WL 15777676 (D.S.C. May 31, 2007) (internal citations omitted).

While the terms of Section 2255 expressly prohibit prisoners from challenging their convictions and sentences through a habeas corpus petition under Section 2241, in limited circumstances, when a Section 2255 is an "inadequate or ineffective remedy," Section 2255's savings clause permits petitioners to bring a collateral attack pursuant to 28 U.S.C. § 2241. In re Vial, 115 F.3d at 1194, n.5; In re Jones, 226 F.328, 333 (4th Cir. 2000). However, "[i]t is beyond question that § 2255 is not inadequate or ineffective merely because an individual is unable to obtain relief under that provision," including

9

because of a procedural bar. Id.

In the Fourth Circuit, a petitioner asserting "actual innocence" may establish "that §2255 is inadequate or ineffective to test the legality of a conviction" if he can prove:

> (1) at the time of conviction, settled law of this circuit or of the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; **and** (3) the prisoner cannot satisfy the gate-keeping provisions of § 2255 because the new rule is not one of constitutional law.

Id. at 333-34 (emphasis added).

There is no dispute that the conduct for which Petitioner was convicted is still a crime – both conspiracy to distribute narcotics and money laundering are still crimes, and Petitioner does not argues to the contrary. Instead, Petitioner alleges that the holding in Cuellar establishes that he is actually innocent of the money laundering, and this finding brings into serious question the validity and continued integrity of the First Circuit's earlier decisions. Petitioner's argument fails for a number of reasons.

In Cuellar, which involved a conviction under 18 U.S.C. § 1956(a)(2)(B)(i)[8], the Supreme Court held that there was insufficient evidence to convict a

---

[8] This section of the criminal code provides as follows:
 (2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—
 (B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part –
  (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the specified unlawful activity;

10

defendant of transportation money laundering where the evidence only established that the defendant hid cash proceeds of drug trafficking under a floorboard of his car for the purposes of transporting it across the border to New Mexico. 553 U.S. at 568. As the Court explained, "[t]here is a difference between concealing something to transport it," which is not punishable under the statute, and "transporting something to conceal it," which is. Id. at 566. (internal quotations marks omitted). Accordingly, the Supreme Court's holding in Cuellar is specific to convictions under 18 U.S.C. § 1956(a)(2)(B)(i). Petitioner, however, was convicted under 18 U.S.C. § 1956(a)(1)(B)(i).[9]

      Moreover, even if Cuellar could be read to apply to Petitioner's conviction under § 1956(a)(1)(B)(i), he still fails to meet the savings clause. In Cuellar, the Supreme Court overruled the Fifth Circuit, which had previously interpreted "design" to refer not to the transportation's purpose, but to the manner in which it was carried out.  However, at the time of Petitioner's conviction, neither the Fourth Circuit nor the First Circuit, the Circuit in which he was convicted, interpreted "design" as the Fifth Circuit did. Instead, both the First and Fourth Circuits had already imposed a similar requirement to the Cuellar Court – that

---

shall be sentenced…..
[9] This provision of the criminal code provides:
    (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –

    (B) knowing that the transaction is designed in whole or in part –

        (i)    To conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity…

shall be sentenced…

Petitioner had to have knowledge of the purpose, intent, or underlying goal of the transactions. United States v, Perez-Colon, 279 F.3d 105, 115 (1st Cir. 2002) ("Where the defendant is someone other than the source of the illegal proceeds (here, Perez), the statute is concerned with his knowledge of the source's intent in the transaction.") (citing United States v, Campbell, 977 F.2d 854, 857-58 (4th Cir. 1992) and United States v. Frigerio-Migiano, 254 F.3d 30, 33 (1st Cir. 2001)). As the First Circuit noted on direct appeal: "As to Perez's knowledge, he was intimately involved in Ayala's drug operations, both helping Ayala retrieve the drugs from Jockey and helping distribute them to the drug points. He also ran two drug points of his own. Perez's deep involvement in Ayala's drug business is enough for a jury to find beyond a reasonable doubt that when Perez agreed to have air conditioners installed, he knew that Ayala was using them to conceal her drug money." Martinez, 279 F.3d at 116.

The undersigned recognizes that Petitioner also relies on Santos, which he raised for the first time in response to the Respondent's Motion to Dismiss. However, the decision in that case also fails to salvage his § 2241 petition.

In Santos, the Supreme Court in a 4-1-4 decision reversed the money-laundering convictions of a defendant convicted of both running an illegal gambling business and money laundering. Santos's gambling counts arose from his operation of an illegal lottery through a network of local bars and restaurants. The money-laundering counts were based on payments by Santos to the "runners" and "collectors" who helped operate the lottery, and to the lottery winners themselves. The lower court concluded that these payments involve the

"proceeds" of operating an illegal lottery, and could therefore constitute grounds for money-laundering convictions.

Five members of the Supreme Court disagreed. A four-Justice plurality concluded that the term "proceeds" in the money-laundering statute was ambiguous-- it could mean either "receipts" or "profits"-- and invoked the rule of lenity to resolve the ambiguity in favor of the defendant. Santos, 533 U.S. at 514. The plurality thus concluded that the money-laundering statute only covers transactions involving "profits" of criminal activity. Id.

In rejecting the statute's broader interpretation, the plurality found that construing "proceeds" to mean "receipts" would create a "merger problem." Id. at 515. The plurality explained that those who run illegal gambling businesses must necessarily pay their accomplices and the lotteries winners. If the defendant could commit money-laundering merely by "paying the expenses of his illegal activity," all illegal gambling businesses would involve money laundering, and the government could punish a defendant twice for an offense that Congress intended to punish only once. Id. at 517.

This merger problem, the plurality noted, is not limited to illegal gambling. Writing for the plurality, Justice Scalia explained:

> Few crimes are entirely free of cost, and costs are not always paid in advance. Anyone who pays for the costs of a crime with its proceeds-- for example, the felon who uses the stolen money to pay for the rented getaway car--would violate the money-laundering statute. And any wealth-acquiring crime with multiple participants would become money-laundering when the initial recipient of the wealth gives his confederates their shares. Generally speaking, any specified unlawful activity, an episode which includes transactions which are not elements of the offense and in which a participant passes receipts onto someone else, would merge with money laundering.

13

Id. at 516. The plurality concluded that interpreting "proceeds" to mean "profits" would resolve the merger problem by ensuring that defendants cannot be convicted of a money-laundering merely for paying the essential "crime-related expenses" of the predicate crime. Id. at 515.

Congress amended the money-laundering statute in May 2009; that amendment effectively overruled Santos, defining proceeds to include "gross receipts." Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 2(f)(1), 123 Stat. 1617, 1618 (2009) (codified at 18 U.S.C. § 1956(c)(9)). However because the amendment was not enacted at the time of the conduct giving rise to the Petitioner's money-laundry convictions, this expanded definition of "proceeds" does not apply in this case. Regardless, Santos does not provide the Petitioner with grounds for granting his § 2241.

In the instant case, the Petitioner was convicted for: (1) conspiring to possess and distribute cocaine, heroin and marijuana and (2) conspiring to engage in illegal financial transactions involving the drug proceeds. Numerous circuits, including the Fourth Circuit, have held Santos-based arguments are not available when the predicate activity for the money laundering charge is drug-related. See United States v. Payton, 437 Fed. Appx. 241, 243 (4th Cir. 2011) (finding Santos inapplicable because defendant's conviction for possession with intent to distribute cocaine base did not present a merger problem with his money laundering conviction); Wilson v. Roy, 643 F.3d 433,437 (5th Cir. 2011) ('Accordingly, in this case, which involves laundering the proceeds of the sales of illegal drugs, Santos does not have the effect of undermining Wilson's money

laundering conviction, and thus Wilson cannot satisfy the requirement that he may have been convicted of a nonexistent offense"); United States v. Quinones, 635 F.3d 590, 599-600 (2d Cir. 2011) (Justice Stevens's opinion is controlling, and he specifically noted that "proceeds" is not intended to mean "profits" where the predicate offense involves the sale of contraband); United States v. Smith, 601 F.3d 30, 544 (6th Cir. 2010) ("As Justice Stevens made clear in his concurring opinion in Santos, the predicate offense of conspiracy to distribute cocaine does not fall within the category of offenses for which 'proceeds' means 'profits'"); United States v. Webster, 623 F.3d 901, 906 (9th Cir. 2010) ("Because neither the conspiracy nor the drug possession count against Webster presents a merger problem, neither requires narrowly defining 'proceeds' as 'profits' for the money laundering counts."); Brace v. United States, 623 F.3d 1167, 1170 n.3 (10th Cir. 2011) ("Even if Brace could raise a Santos argument, he would not prevail because Santos does not hold that 'proceeds' means 'profits' in the context of drug sales;" United States v. Mitchell, 613 F.3d 862, 867 (8th Cir. 2010) ("proceeds equates with gross receipts when the funds are derived from drug sales") Accordingly, the Petitioner's reliance on Santos is without merit.

## IV.   RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** that the Respondent's Motion to Dismiss [ECF No. 11] be GRANTED, and the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and

recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to the parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED**: March 16, 2017

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE